778 P.2d 443

**Kelly RODERICK, Plaintiff–Appellee,**

v.

**Edgar L. LAKE, Roland Hohenberg and Robert W. Lake, Defendants–Appellants.**

**No. 10489.**

Court of Appeals of New Mexico.

June 6, 1989.

Certiorari Denied July 27, 1989.

George A. Harrison, George A. Harrison, P.A., Albuquerque, for plaintiff-appellee.

Winston Roberts–Hohl, Santa Fe, for defendants-appellants.

## OPINION

BIVINS, Chief Judge.

Plaintiff sued to recover damages for personal injuries sustained when the car he was driving struck two thoroughbred horses on Christmas Eve 1985. Following a bench trial, the court found no negligence on the part of defendant Robert W. Lake, the owner of the fenced property on which the horses were kept, and dismissed plaintiff's complaint against him with prejudice. Plaintiff does not appeal that dismissal. The trial court found the remaining defendants, Edgar L. Lake and Roland Hohenberg, the owners of the two horses, had engaged in a joint venture as to the control and maintenance of the two horses and held them jointly and severally liable to plaintiff for the damages awarded. It predicated liability on the doctrine of res ipsa loquitur as well as negligent violation of applicable statutes and San Juan County, N.M., Ordinance 10 (July 20, 1982). The trial court assessed no negligence against plaintiff. From a judgment entered on the findings, Edgar and Roland appeal.

Although defendants raise four issues on appeal, we consolidate them for discussion as follows: (1) whether the trial court erred in finding defendants liable either under

the doctrine of res ipsa loquitur or for violation of applicable statutes and the ordinance (negligence per se); and (2) whether the trial court erred in finding defendants engaged in a joint venture, resulting in joint and several liability, and in failing to apportion fault between the two defendants. We hold substantial evidence supports liability against both defendants for negligence per se, and need not, therefore, discuss the trial court's findings on res ipsa loquitur. We hold, however, that there is insufficient evidence to support the finding of joint venture. Accordingly, we set aside the judgment and remand for apportionment of negligence between defendants. Under the circumstances of this case, it cannot be determined which defendant was more at fault. Therefore, we hold the burden was on defendants, not plaintiff, to prove apportionment.

FACTS

Summarizing the trial court's findings of fact, plaintiff was traveling west on County Road 6700 in San Juan County at approximately 6:00 p.m. on December 24, 1985, in a safe and lawful manner, when two horses darted onto the highway in front of him. "It was dark at the time * * * and the horses were dark colored." Plaintiff did not have time to brake and recalled no details of the accident. He suffered serious injuries.

Robert owned the land adjacent to the county road. His brother, Edgar, kept several of his horses there, including one of the horses involved in the accident. Roland, an associate and trainer for Edgar, owned the other horse and also kept it on Robert's property.

Edgar had brought the two horses from the racetrack around 3:30 p.m. the day of the accident and fed them at 5:00 p.m., after which Edgar left. Roland remained there. Since Roland did not testify, we are not told if he left subsequent to Edgar and before the accident or remained there until the accident occurred.

There was testimony that the horses could not escape except through the gate. After the accident the gate was found "sprung open." The latch on the gate confining the horses had been left open.

DISCUSSION

### 1. *Liability*

Plaintiff alleged that two state statutes and one local ordinance are applicable to this case. He alleged that violation of these statutes and ordinance constitutes negligence per se. NMSA 1978, Section 30-8-13(A) (Repl.Pamp.1984) provides that "[u]nlawfully permitting livestock upon public highways consists of any owner or custodian of livestock negligently permitting his livestock to run at large upon any part of a public highway which is fenced on both sides." Section 30-8-13(B) further provides that "[e]very owner or custodian of livestock shall exercise diligence to keep his livestock off the state public fenced highways." NMSA 1978, Section 66-7-363(B) (Repl.Pamp.1987) provides that "[i]t is unlawful for any person negligently to permit livestock to wander or graze upon any fenced highway at any time." San Juan County Ordinance 10 provides, "Any person owning or having charge, custody, care or control of any animal shall keep such animal on his premises."

In tort actions, negligence is the ultimate fact. Proof of the violation of a statute is proof of that ultimate fact. *Mitchell v. Ridgway*, 77 N.M. 249, 421 P.2d 778 (1966). In New Mexico, four factors must be present to find negligence per se.

"(1) [T]here must be a statute which pr[o]scribes certain actions or defines a standard of conduct, either explicitly or implicitly, (2) the defendant must violate the statute, (3) the plaintiff must be in the class of persons sought to be protected by the statute, and (4) the harm or injury to the plaintiff must generally be of the type the legislature through the statute sought to prevent."

*Valdez v. Cillessen & Son, Inc.*, 105 N.M. 575, 577, 734 P.2d 1258, 1260 (1987) (quoting *Archibeque v. Homrich*, 88 N.M. 527, 532, 543 P.2d 820, 825 (1975). *See also, e.g., Bouldin v. Sategna*, 71 N.M. 329, 378 P.2d 370 (1963); *Srader v. Pecos Const. Co.*, 71 N.M. 320, 378 P.2d 364 (1963).

All these factors are present in this case. The statutes and ordinance quoted above clearly proscribe allowing animals to run at large on fenced public highways, such as the road involved here; the horses were running free at the time of the accident; plaintiff, a member of the motoring public, was in the class of persons sought to be protected; and his injuries were of the type the legislature sought to avoid. According to *Mitchell* and *Fireman's Fund Insurance Co. v. Tucker*, 95 N.M. 56, 618 P.2d 894 (Ct.App.1980), the purpose of Sections 30–8–13 and 66–7–363 is to protect the motoring public.

Evidence presented at trial showed that livestock had never escaped from the property, and that the horses could not have gotten out of their enclosure unless someone left the gate open. Robert testified that a person leaving the gate open would have been negligent. Edgar contends that, since he testified without contradiction that he secured the gate when he left, that the fence was sufficiently high to contain the horses, and that there was testimony the gate was found open following the accident, the only possible inference is that someone following Edgar failed to properly close the gate. That was one possible inference, particularly if we know whether Roland left after Edgar and before the accident occurred. But we do not know that. For reasons that do not appear in the record, Roland did not testify. The trial court could just as easily infer that Roland did not leave and that Edgar was the last to open the gate before the accident, given the proximity in time from when he left, shortly after 5:00 p.m., and when the accident occurred, 6:00 p.m.

Edgar argues that an inference of negligence on his part is not permissible in face of his testimony that he closed the gate. He also testified, in response to the question of whether the horses could ordinarily get out, absent something wrong with the fence or the gate being left open, "Somebody had to open the gate. I don't know

who did, but somebody had to." The trial court may have questioned Edgar's credibility in light of the fact that Roland, his associate and trainer, absented himself from the trial, and Edgar said he never discussed with Roland when he left the evening of the accident.

The trier of fact determines the credibility of the witnesses and resolves conflicts in the evidence. *Getz v. Equitable Life Assurance Soc'y of United States*, 90 N.M. 195, 561 P.2d 468, *cert. denied*, 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977); *Tapia v. Panhandle Steel Erectors Co.*, 78 N.M. 86, 428 P.2d 625 (1967). We do not reweigh the evidence, nor do we substitute our judgment for the trial court's, so long as the trial court's findings are supported by substantial evidence. *Getz v. Equitable Life Assurance Soc'y of United States.*

As to Roland, if the trial court inferred that he remained after Edgar left, it could find him negligent for not observing the unlatched gate or the horses running loose.[1]

In this case, because it is undisputed that the animals were running at large, and that they could not have escaped without someone's negligence, plaintiff carried his burden of showing a violation of the statute. Defendants have not pointed to any evidence which would excuse the violation of the statute, that is, that they did what might reasonably be expected of a person of ordinary prudence, under similar circumstances, who desired to comply with the law. *See Sanchez v. J. Barron Rice, Inc.*, 77 N.M. 717, 427 P.2d 240 (1967).

We therefore affirm the trial court's finding that defendants' violation of the statutes and ordinance constituted negligence for which they were liable.

2. *Joint and Several Liability Versus Apportionment*

Except to the extent modified by statute, NMSA 1978, Section 41–3A–1 (Cum.Supp.1988), which the parties agree does not apply to this case, joint and sever-

---

**1.** Curiously, in their brief-in-chief, defendants in effect concede Roland's liability under the doc-

trine of res ipsa loquitur.

al liability among concurrent tortfeasors no longer exists in New Mexico. *Bartlett v. New Mexico Welding Supply, Inc.,* 98 N.M. 152, 646 P.2d 579 (Ct.App.1982). *See also Wilson v. Galt,* 100 N.M. 227, 668 P.2d 1104 (Ct.App.1983). Each concurrent tortfeasor is liable only for his apportioned fault or negligence. *Bartlett v. New Mexico Welding Supply, Inc.* The appellate courts have not heretofore considered whether the relationship between concurrent tortfeasors and the manner in which they transact their business that gives rise to the damages inflicted makes any difference. The trial court determined it did in this case.

### (a) *Joint Venture*

■ The trial court found that a joint venture existed between defendants "regarding the care, maintenance and control of the fenced enclousre [sic] holding the two horses." Because a joint venture is a partnership for a single transaction, *Hansler v. Bass,* 106 N.M. 382, 743 P.2d 1031 (Ct.App.1987), and partners are jointly and severally liable for the obligations of the partnership, NMSA 1978, Section 54–1–15 (Repl.Pamp.1988), the trial court found Edgar and Roland jointly and severally liable for the full amount of plaintiff's damages. *See Boise City Farmers Coop. v. Layton,* 83 N.M. 248, 490 P.2d 965 (1971).

*Cooper v. Curry,* 92 N.M. 417, 589 P.2d 201 (Ct.App.1978), holds,

"As a general rule, in order to constitute a joint adventure there must be a community of interest in the performance of a common purpose, a joint proprietary interest in the subject matter, a mutual right to control, a right to share in the profits, and a duty to share in any losses which may be sustained."

92 N.M. at 421, 589 P.2d at 205 (quoting *Underwood v. Holy Name of Jesus Hosp.,* 289 Ala. 216, 219, 266 So.2d 773, 776 (1972).

We agree with Edgar that proof of several of the elements was missing. In fact, the only evidence suggesting a joint venture was testimony that Edgar and Roland kept their respective horses on Robert's property, and that they shared responsibility for feeding and watering the horses and for keeping them from running loose. They usually performed these chores several times a day and usually did it together. There was also evidence of mutual exclusive control over the responsibilities for restraining the horses.

Lacking, however, is any proof of a joint proprietary interest, a right to share in the profits, and a duty to share in any losses. In fact, the evidence indicates Edgar maintained several horses on the property; Roland had only one. The evidence is more indicative of an arrangement of convenience.

A joint venture is never presumed and the burden to establish it remains with the party who alleges or relies on it. *Dean Vincent, Inc. v. Russell's Realty, Inc.,* 268 Or. 456, 521 P.2d 334 (1974) (In Banc). Here plaintiff did not plead a joint venture. In fact, the subject did not come up until the trial court raised it at the conclusion of the proof.

Assuming, without deciding, that a joint venture between two or more concurrent tortfeasors would make them jointly and severally liable, the evidence here did not make out a joint venture. We defer that issue to a case in which joint venture has been established.

### (b) *Apportionment*

Defendants' brief-in-chief, relying on *Bartlett,* argues that the trial court erred in not apportioning fault between them, suggesting, "The evidence in this case and the only permissible inference is that Mr. Hohenberg was the more negligent party."

We agree that the trial court must apportion fault in this case, and remand for that purpose. Because of the rather unusual circumstances, we offer guidance to the trial court.

■ The question presented is, How does the trier of fact apportion fault or negligence when there is no direct evidence as to which concurrent tortfeasor caused the harm? Ancillary to that question is the further question of which party bears the

burden of proving apportionment under these circumstances.

Normally, of course, the plaintiff bears the burden of proving that a defendant's negligence caused his injury. In cases such as this, however, we hold that, where defendants are independent but concurrent tortfeasors and thus each liable for the damage caused by him alone, but the matter of apportionment is incapable of proof, the innocent wronged party should not be deprived of redress. Rather, the wrongdoers should be left to work out between themselves any apportionment. Under the circumstances present in this case, the burden shifts to each defendant to absolve himself, if he can, thereby relieving the wronged party of the duty of apportioning fault as between defendants.

*Summers v. Tice*, 33 Cal.2d 80, 199 P.2d 1 (1948) (In Bank) provides guidance. In that case, the plaintiff sued two members of a hunting party for injuries to the plaintiff's right eye and face caused by birdshot discharged from a shotgun. The plaintiff and the two defendants were hunting quail on the open range. Each of the defendants was armed with a shotgun loaded with shells containing the same size shot. In the course of hunting, the plaintiff proceeded up a hill, thus placing the defendants at the points of a triangle. One of the defendants flushed a quail, whereupon both defendants shot at the quail, shooting in the plaintiff's direction. One shot struck the plaintiff in his eye and another in his upper lip. The trial court found that, as a direct result of the shooting by the defendants, the shots struck the plaintiff, that the defendants were negligent in so shooting, and that the plaintiff was not contributorily negligent.

On appeal by both defendants, the California Supreme Court held that, under these facts, the burden of proving which defendant's shot struck the plaintiff shifted to the defendants. The court went on to hold that, if defendants are independent tortfeasors each liable for the damage caused by him alone, and the matter of apportionment is incapable of proof, the injured wronged party should not be deprived of his right to redress. The wrongdoers should be left to work out between themselves any apportionment. *See also Bowman v. Redding & Co.*, 449 F.2d 956 (D.C.Cir.1971) (applying *Summers* rule).

The *Restatement (Second) of Torts* Section 433B (1965) embodies the rule of *Summers*. Subsections (2) and (3) of that section provide:

(2) Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.

(3) Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.

Comment (f) explains the purpose of these sections, which provide an exception to the general rule that a plaintiff bears the burden of proving that a wrongdoer has caused his or her harm.

[T]he reason for the exception[s] is the injustice of permitting proved wrongdoers, who among them have inflicted an injury upon the entirely innocent plaintiff, to escape liability merely because the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused the harm.

We adopt this rule in New Mexico as the fairest and most logical way to determine the amount of fault of two or more tortfeasors in the unusual circumstances of cases such as this one, where plaintiff can prove defendants were negligent, but cannot prove which defendant's negligence caused the injury, or which defendant was more at fault.

On remand the trial court should consider apportionment between defendants, based upon this burden which rests with them, not plaintiff. While this task is difficult, we do not believe it impossible. As

we have previously discussed, there is evidence from which the court could infer that Edgar was the last one to leave the gate before the horses escaped, and that Roland remained on the property but was somewhere else at the time Edgar left. If the trial court infers that Roland did not leave before the accident, then his negligence would be for not observing the improperly secured gate or the fact that the horses had escaped. We express no opinion as to how such apportionment should be made based on these and other relevant facts before the court.

CONCLUSION

We affirm the trial court's judgment as to liability and damages, except for the finding of a joint venture and the conclusion as to joint and several liability based thereon. We remand solely for the purpose of apportioning fault between the two defendants. Defendants shall pay the cost of appeal.

IT IS SO ORDERED.

MINZNER and CHAVEZ, JJ., concur.