840 P.2d 612

**Mary Ann STETZ, Plaintiff–Appellee,**

**v.**

**SKAGGS DRUG CENTERS, INC., Skaggs Companies, Inc., and Fair Plaza, Inc., Defendants–Appellants.**

**No. 12764.**

Court of Appeals of New Mexico.

Sept. 21, 1992.

Mark J. Klecan, Klecan, Childress & Huling, Albuquerque, for plaintiff-appellee.

Matthew P. Holt, Sager, Curran, Sturges & Tepper, P.C., Las Cruces, for defendants-appellants.

## OPINION

PICKARD, Judge.

Defendants appeal from the trial court's judgment awarding plaintiff $10,000 in damages from Skaggs and $18,000 in damages from Fair Plaza, Inc., after finding that plaintiff suffered a total of $40,000 in damages from the incident giving rise to this lawsuit. Defendants contend that the trial court erred in determining that (1) defendants were obligated to protect plaintiff against an open and obvious danger, (2) Skaggs had a duty to maintain the sidewalk where plaintiff fell, (3) Fair Plaza was liable when it was not a proper party to the proceedings, and (4) the evidence of aggravation was sufficient to sustain the award of damages. Other issues raised in the docketing statement but not briefed are deemed abandoned. *State v. Fish*, 102 N.M. 775, 777, 701 P.2d 374, 376 (Ct.App. 1985). We affirm on issues 1, 3, and 4, reverse on issue 2, and remand for further proceedings.

## 1. LIABILITY FOR AN OPEN AND OBVIOUS DANGER

Plaintiff was injured when she fell on a sidewalk leading to the Skaggs store in the Fair Plaza Shopping Center while on her way into the store. An area of the sidewalk next to the wall and about three feet from the door was in disrepair. Plaintiff did not dispute the obvious nature of the sidewalk disrepair at trial, nor does she contest it on appeal. It also appears that the conspicuous condition of the defect was taken into account by the trial court in determining that plaintiff was comparatively negligent in trying, but apparently failing, to walk around it. Defendants main-

tain that because of the "open and obvious" quality of the disrepair, the trial court erred in finding that they had any duty to warn plaintiff about it or to protect her from it.

Both parties rely on this court's opinion in *Davis v. Gabriel,* 111 N.M. 289, 804 P.2d 1108 (Ct.App.1990). In *Davis,* the trial court directed a verdict for the defendant-lawyer in a malpractice suit. The basis of the directed verdict was that the plaintiff would not have recovered in the underlying suit against a contractor because of the open and obvious nature of debris which caused the plaintiff's fall. *Id.* at 290, 804 P.2d at 1109. We reversed the judgment, holding that the plaintiff's knowledge of the hazard would not necessarily bar his recovery in the underlying suit because the scope of the contractor's duty was to be determined by reference to the foreseeable behavior of "reasonably careful invitees." *Id.* at 292, 804 P.2d at 1111.

■ The reasonably-careful-invitee test of *Davis* has been abrogated by our supreme court in *Klopp v. Wackenhut Corp.,* 113 N.M. 153, 157, 824 P.2d 293, 297 (1992), holding that "in a place of public accommodation, an occupier of the premises owes a duty to safeguard each business visitor whom the occupier reasonably may foresee could be injured by a danger avoidable through reasonable precautions available to the occupier of the premises." Under *Klopp,* neither the open and obvious nature of a defect nor the injured party's own negligence constitutes an automatic bar to recovery. *Id.* Rather, it is only when the contributory negligence of the business visitor is so extraordinary as to have been unforeseeable that the occupant's failure to take precautions against an open and obvious risk does not constitute a breach of duty. *Id.* at 158, 824 P.2d at 298. *Klopp* directs the trial court to determine first as a matter of law whether "the contributory negligence of the business visitor was foreseeable in the face of known or obvious dangers," and, if it was, to instruct the jury to decide whether the occupier of the premises breached its duty to use ordinary care

to keep the premises safe for such visitors. *Id.* at 158–59, 824 P.2d at 298–99.

■ In this case, the trial court determined that plaintiff stumbled and fell as a result of a "dangerous and defective area," and that "[b]oth Skaggs and Fair Plaza should have foreseen that it was reasonable to expect that someone in the position of the plaintiff attempting to enter the leased premises could have fallen and sustained injury." There was evidence to show that plaintiff tripped as she attempted to avoid the defective area, and that the area had been allowed to remain in disrepair for as long as a year before plaintiff's fall. The evidence before the court also included an admission by Skaggs' manager that the area was dangerous, and testimony as to his complaints concerning the hazard, which failed to result in its repair or other measures to protect or warn business invitees. Based on this evidence, the trial court could conclude that plaintiff's contributory negligence was foreseeable, and that defendants were liable for failing to keep the premises in a reasonably safe condition. *See id.*

Even under the state of the law prior to *Klopp,* defendants' first issue would be without merit. Defendants' argument is premised on the fact that plaintiff was negligent and, therefore, they had no duty to take steps that are necessary only to protect the negligent. This argument fails because the conduct of the specific invitee is irrelevant under *Davis* in determining the duty. Thus, ignoring plaintiff's negligence, there is a duty here for the same reason a duty existed in *Davis.*

### 2. LIABILITY OF SKAGGS

■ Defendants argue that because Skaggs neither owned nor occupied the exact portion of land where plaintiff fell, and because its right to make exterior repairs under its lease with Fair Plaza was limited, it owed no duty to plaintiff "under any set of circumstances." We agree.

■ Both sides have cited *Bober v. New Mexico State Fair,* 111 N.M. 644, 808 P.2d 614 (1991), as controlling authority on this point. Our task is to determine how *Bober*

applies in this case. The foundation of premises liability is that owners, occupiers, or possessors of premises have responsibility only for hazards arising on or from their premises. *See* SCRA 1986, 13–1309 (Repl.1991) (duty to keep owner's or occupant's premises safe); SCRA 1986, 13–1319 (Repl.1991) (consequences of dangerous condition on defendant's premises). Thus, in the context of a shopping mall, it is black-letter law that it is the mall owner, and not the various shopkeepers, who has legal responsibility for conditions in the common areas of a shopping center. 62 Am.Jur.2d *Premises Liability* § 445 (1990) (citing, inter alia, *Torres v. Piggly Wiggly Shop Rite Foods, Inc.*, 93 N.M. 408, 410, 600 P.2d 1198, 1200 (Ct.App.1979)).

Nothing the supreme court said in *Bober* is to the contrary. That case merely applied the traditional rule that one who owns or controls property has a duty to refrain from creating or permitting conditions on such property that will foreseeably lead to an unreasonable risk of harm to others beyond the property's borders. *Bober* involved a hazardous condition on a landowner's premises spilling over onto the property of another. *See also Monett v. Dona Ana County Sheriff's Posse*, 114 N.M. 452, 840 P.2d 599 (Ct.App.1992) (fair was potentially liable for hazard on its premises that spilled over onto posse's property (mixture of golf carts and crowds of pedestrians), but was not potentially liable for dangerous condition created by posse on its own property (configuration of gate and ticket area)).

Plaintiff here also relies on a provision in the lease between Skaggs and Fair Plaza giving Skaggs the right under certain circumstances to make repairs and then be reimbursed by Fair Plaza. The lease agreement does not help plaintiff. The circumstances set forth in the lease were limited to emergencies when the landlord could not be located by telephone and the cost of the repairs did not exceed $200. There was no evidence adduced at trial sufficient to support a finding that any of these circumstances existed. Thus, plaintiff cannot rely on the lease to create a duty on the part of Skaggs.

Nor does *Mitchell v. C & H Transportation Co.*, 90 N.M. 471, 565 P.2d 342 (1977), support plaintiff's right to recover against Skaggs. While that case stated a duty to provide safe ingress and egress, the duty there was inextricably intertwined with certain highway regulations that extended the landowner's or lessor's responsibility onto the highway right of way when there was a driveway involved. We acknowledge here, as we did in *Monett*, that language in *Mitchell* seeming to require that the duty to provide safe ingress and egress extends " 'within limitations dictated by the facts of the case, beyond the precise boundaries of [the owner's] premises.' " *Mitchell*, 90 N.M. at 475, 565 P.2d at 346 (quoting *McDonald v. Frontier Lanes, Inc.*, 1 Ill. App.3d 345, 272 N.E.2d 369, 372 (1971)). In *Monett*, we said that the showing of sole control over the posse area by the posse was a limitation dictated by the facts of that case. To a like effect, in this case, the lease provision, giving Skaggs a limited right to make repairs under certain well-defined circumstances, would be a similar limitation.

Because there is a trend toward recognizing that property owners have a duty to business invitees to remedy even open and obvious dangers, *see, e.g., Klopp*, 113 N.M. at 157, 824 P.2d at 297, it is especially important that appellate courts provide firm guidelines as to when such a duty arises. The *Mitchell* language provides no such guidelines. If the language imposes on Skaggs a duty to repair a defect in the sidewalk near its entrance, does that duty extend farther down the sidewalk? Into the mall parking lot? Into the public street? Was it shared with other tenants of the mall? Who is responsible if Skaggs negligently repairs the defects existing on property owned by its neighbor?

The rationale of stare decisis requires that judicial opinions serve the broader societal interest in the predictable application of legal rules. *Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 277, 100 S.Ct. 2647, 2658, 65 L.Ed.2d 757 (1980). Extending a duty beyond the owner or possessor's premises for hazards not on the premises

or arising on or from the premises makes the existence of duty entirely unpredictable. For these reasons, Skaggs had no duty to plaintiff in this case.

## 3. ENTRY OF JUDGMENT AGAINST FAIR PLAZA, INC.

■ Defense counsel represented Alvarado Realty Company, Skaggs, and Fair Plaza, Inc. At trial, defense counsel attempted to exonerate Alvarado Realty and Skaggs from liability, and to further defeat plaintiff's recovery by arguing that only Fair Plaza might have had some liability for repairing the defect, and that it was "not a party to the lawsuit at this time." In response to that argument, plaintiff asked the court to conform the pleadings to the evidence to reflect the relationship between Alvarado Realty and Fair Plaza. Defense counsel then conceded that Alvarado Realty and Fair Plaza shared "a certain degree" of common ownership and common corporate officers, and argued only that it would be "grossly unfair" to treat Fair Plaza as a party at that point in the proceedings. Significantly, defense counsel did not argue in the proceedings below, as he does on appeal, that the court lacked personal jurisdiction over Fair Plaza, that Fair Plaza would be denied due process, that Fair Plaza was being denied its right to jury trial, or that it was being deprived of the opportunity to raise defenses, including operation of the statute of limitations.

The trial court took plaintiff's motion, which was based on the deposition of Louis Abruzzo, under advisement. Abruzzo's deposition indicates that Alvarado Realty is a parent corporation and Fair Plaza is its subsidiary. For instance, (1) Abruzzo referred to Alvarado Realty and Fair Plaza jointly as "our organization"; (2) insurance coverage taken out by Alvarado Realty was to protect "us," meaning Alvarado and Fair Plaza; (3) Alvarado Realty is the managing-majority-owner-entity, and Fair Plaza was described by Abruzzo as a "corporate shell that's operated by and through Alvarado"; (4) the majority of Fair Plaza stock is owned by Alvarado Realty, and Alvarado Realty and Fair Plaza share the same office space, have commingled work, and common corporate officers. In addition, during the course of the deposition (which was prior to the time defense counsel assumed representation of Skaggs), defense counsel referred to Alvarado Realty and Fair Plaza together as his "sole client."

Defense counsel did not elaborate at trial on why joinder of Fair Plaza under these circumstances would be unfair, nor did he tender requested findings and conclusions on this point. *See* SCRA 1986, 1–015(C) (Repl.1992) (permitting amendments to change party against whom claim is asserted); SCRA 1986, 1–021 (Repl.1992) (parties may be added on motion of any party at any stage of the action on such terms as are just); *see also Galion v. Conmaco Int'l, Inc.*, 99 N.M. 403, 406–07, 658 P.2d 1130, 1133–34 (1983) (party properly brought in by amendment when corporations had substantial identity of interest and party to be substituted had sufficient notice and service of process within a reasonable time after the limitations period expired); *Rivera v. King*, 108 N.M. 5, 10, 765 P.2d 1187, 1192 (Ct.App.1988) (regarding notice, party to be brought in must have such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; if there is an identity of interest between defendants originally sued and those to be added, notice to original defendants within the limitations period is sufficient). Furthermore, there was a prior appeal from the judgment in this case, and defense counsel failed to raise the issue in his docketing statement filed in the first appeal.

In that appeal, we remanded the cause for entry of formal findings of fact and conclusions of law by the trial court. Although defense counsel later filed a motion to dismiss or, in the alternative, for new trial, that motion also failed to raise the issue. Prior to entry of the first judgment, however, plaintiff had specifically requested that the trial court make a determination as to its jurisdiction over the parties, including Fair Plaza. We further note that defense counsel specifically invoked the court's jurisdiction on behalf of Fair Plaza

by filing a motion to compel on behalf of "Defendant, Fair Plaza, Inc." some three weeks after the filing of the stipulated dismissal of the third-party complaint.

 Under the facts of this case, we find that defense counsel waived this issue. The defense of lack of personal jurisdiction is subject to waiver when not properly asserted. *See* SCRA 1986, 1–012(H) (Repl.1992). When findings of fact and conclusions of law are not requested on an issue, the issue is not properly preserved for review and it may not be raised for the first time on appeal. SCRA 1986, 1–052(B)(1)(f) (Repl.1992); *Crownover v. National Farmers Union Property & Casualty Co.*, 100 N.M. 568, 572, 673 P.2d 1301, 1305 (1983). Furthermore, defense counsel's additional failure to raise the issue at all in his first appeal when he could have done so is further reason to find waiver of this claim. *See DiMatteo v. County of Dona Ana*, 109 N.M. 374, 379, 785 P.2d 285, 290 (Ct.App.1989) (doctrine of law of the case means that prior appellate decision is binding on appellate court if there are further appeals, and doctrine extends not only to questions raised upon former appeal, but also to those that could have been raised); *cf. State v. Gillihan*, 86 N.M. 439, 440, 524 P.2d 1335, 1336 (1974) (assertions in second or successive postconviction proceeding which could have been but were not asserted in prior proceeding are deemed waived).

### 4. SUFFICIENCY OF THE EVIDENCE

██ Defendants complain that plaintiff "introduced no evidence that would establish that there was a reasonable certainty that her pre-existing condition had been aggravated, and provided no medical evidence concerning the degree of the aggravation." Defendants do not argue that the court's finding of total damages of $40,000 is excessive, however.

The court's findings included determinations that (1) plaintiff sustained personal injuries as a result of the fall which caused pain, suffering, and inconvenience; (2) plaintiff's pre-existing medical conditions were aggravated by the accident; and (3) as a result of her injuries, plaintiff sustained damages for loss of household services. While defendants attack the court's finding as to the aggravation of plaintiff's condition, they do not specifically attack the court's determinations that plaintiff experienced increased pain and discomfort after her fall or the conclusion that she sustained damages for loss of household services. These findings are binding on this court. *Winrock Enters., Inc. v. House of Fabrics, Inc.*, 91 N.M. 661, 663, 579 P.2d 787, 789 (1978). We also note that defendants did not request the trial court to make a finding on the extent of aggravation, but only asserted a failure of proof on this point.

Plaintiff's grandson testified that plaintiff was in pain immediately following the fall. He also stated that her condition had changed "for the worse" since she fell. Plaintiff testified that after the fall, she restricted her volunteer activities because of discomfort. She also stated that she experienced backaches, problems with her knee, and difficulty in using her hands after her fall, all of which caused her to curtail household as well as outside activities. She specifically stated that while she had had problems with her knees before the accident, she had greater problems and pain afterwards. In addition to pain in her knee, plaintiff also specified that she had hip, pelvis, and shoulder pain after her fall, and that she had not experienced problems with her hip or pelvic area prior to the fall.

The medical records presented below indicate that prior to this fall, plaintiff was slowly improving. These records further reflect that as a result of the fall, plaintiff experienced and was treated for pain in her right knee and hip, as well as her rib cage, and that it hurt her to breathe. In addition, correspondence prepared by plaintiff's physician details the symptoms she experienced as a result of the fall, and it indicates some aggravation of her previously existing knee condition, occasioning prescriptions for pain medication and orders for ultrasound therapy.

 This court does not reweigh evidence. *Lopez v. Smith's Management*

*Corp.*, 106 N.M. 416, 418, 744 P.2d 544, 546 (Ct.App.1986). On appeal, all disputed facts are resolved in favor of the prevailing party, and all reasonable inferences are indulged to support the verdict; inferences to the contrary are discarded. *Id.* at 417, 744 P.2d at 545. Medical evidence was introduced in this case to corroborate plaintiff's complaints and to provide some comparative evidence of aggravation. Plaintiff's complaints to the doctors were admissible evidence. *See Alvillar v. Hatfield,* 82 N.M. 565, 567, 484 P.2d 1275, 1277 (Ct.App. 1971). The comparative evidence of aggravation in the medical records was also admissible. *See Morris v. Rogers,* 80 N.M. 389, 391, 456 P.2d 863, 865 (1969) (aggravation need not be stated as a percentage amount, but may be established by comparative testimony). This evidence was sufficient to sustain the trial court's judgment. Moreover, having failed to request a specific finding on the extent of aggravation, defendants are "not in a position to complain of the absence of such a finding." *See Alvillar,* 82 N.M. at 569, 484 P.2d at 1279.

## CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part. Specifically, because Skaggs owed no duty to plaintiff, it could not be held liable to her. Because the trial court apportioned a percentage of plaintiff's total damages to Skaggs, we believe the case must be remanded to the trial court to reapportion the damages solely between plaintiff and Fair Plaza. *See Ferbrache v. Dillon,* 100 Idaho 317, 597 P.2d 40, 42–43 (1979). Because we do not know how the trial court will do this, we do not believe it is appropriate to simply reverse the $10,000 awarded to plaintiff from Skaggs while affirming the $18,000 awarded to plaintiff from Fair Plaza. Accordingly, the matter is remanded to the trial court for a new apportionment and entry of judgment consistent therewith.

IT IS SO ORDERED.

CHAVEZ and BLACK, JJ., concur.