# CONNECTICUT INTERLOCAL RISK MANAGEMENT AGENCY *v.* CHRISTOPHER JACKSON ET AL.
## (SC 19946)

Palmer, McDonald, D'Auria, Mullins, Kahn and Ecker, Js.

*Syllabus*

Pursuant to the alternative liability doctrine, when the conduct of two or more actors is tortious and it is proven that the plaintiff's injuries have been caused by only one of those actors but it is unclear which one, the burden of proving causation shifts from the plaintiff to each actor to prove that he did not cause those injuries.

The plaintiff appealed from the trial court's judgment in favor of the defendants, three teenagers who had entered an abandoned mill in the town of Somers and discarded multiple cigarette butts without extinguishing them, thereby causing a fire that destroyed the mill and a sewage line in the mill's basement. While the defendants were exploring inside the mill for about forty-five minutes, each of them smoked approximately five cigarettes and discarded their unextinguished cigarettes by tossing them onto the mill's wooden floor. Experts later determined that the

Connecticut Interlocal Risk Management Agency *v.* Jackson

likely cause of the fire was the defendants' careless disposal of the cigarettes. After the plaintiff paid the town for the cost of replacing the sewage line, it brought the present subrogation action against the defendants. The trial court granted the defendants' motions for summary judgment, concluding that the plaintiff could not prevail on the element of causation because it was unable to establish which of the defendants' cigarettes caused the fire. The trial court also declined the plaintiff's request to apply the alternative liability rule, reasoning that it would have the effect of significantly changing the negligence standards in this state and that adoption of the rule was a policy decision to be made by an appellate court or the legislature, none of which previously had endorsed the rule. On appeal, the plaintiff claimed that the trial court improperly failed to apply the alternative liability rule in granting the defendants' motions for summary judgment. *Held* that the plaintiff should have received the benefit of the alternative liability rule for the purpose of proving its case against the defendants, and, therefore, this court reversed the trial court's judgment and remanded the case for further proceedings: faced with the choice of leaving an injured plaintiff without a remedy, on the one hand, and requiring multiple wrongdoers, all of whom acted negligently toward the plaintiff and created the situation in which the plaintiff was injured, to bear the burden of absolving themselves, on the other, this court concluded that the latter approach, which has been adopted in at least some form in nearly all jurisdictions, represented the fairer, more sensible alternative, and, accordingly, this court adopted the alternative liability rule for application in cases in which the plaintiff can demonstrate that all of the defendants acted negligently and the plaintiff suffered harm, all possible tortfeasors have been named as defendants, and the tortfeasors' negligent conduct was substantially simultaneous in time and of the same character so as to create the same risk of harm; moreover, all of the requirements for the rule to apply were satisfied in the present case, as the plaintiff had adduced evidence demonstrating that all three of the defendants acted negligently, that all possible tortfeasors had been named as defendants, and that the tortious conduct of those defendants was substantially simultaneous and of the same character; furthermore, this court's adoption of the alternative liability rule was not incompatible with this state's statutory apportionment of liability scheme, the defendants identified no facts or circumstances that would render retroactive application of the alternative liability rule in the present case unfair or unduly harsh, and there was no basis for the defendants' claim that applying the rule to them would violate or compromise any legitimate reliance interest that they may have had.

Argued November 9, 2018—officially released September 17, 2019

*Procedural History*

Action to recover damages to certain real property sustained as a result of the defendants' alleged negli-

Connecticut Interlocal Risk Management Agency *v.* Jackson

gence, and for other relief, brought to the Superior Court in the judicial district of Tolland, where the court, *Cobb*, *J.*, granted the defendants' motions for summary judgment and rendered judgment thereon, from which the plaintiff appealed. *Reversed*; *further proceedings*.

*Heather J. Adams*, with whom was *Sarah F. D'Addabbo*, for the appellant (plaintiff).

*James P. Sexton*, with whom were *Danielle J.B. Edwards*, *Sergio C. Deganis* and *Erin M. Field*, for the appellees (defendants).

*Opinion*

PALMER, J. To prevail in a negligence action, a plaintiff ordinarily must establish all of the elements of that cause of action, namely, duty, breach, causation, and damages. See, e.g., *Snell* v. *Norwalk Yellow Cab, Inc.*, 332 Conn. 720, 742, A.3d (2019). In this appeal, which presents an issue of first impression for this court, we must decide whether to adopt the alternative liability doctrine, which was first articulated in *Summers* v. *Tice*, 33 Cal. 2d 80, 85–87, 199 P.2d 1 (1948), and later endorsed by the Restatement (Second) of Torts. That rule provides that, when "the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm." 2 Restatement (Second), Torts § 433 B (3), pp. 441–42 (1965).[1] We are persuaded that the doctrine is a sound one and therefore adopt it.

---

[1] The alternative liability doctrine also has been adopted in the Third Restatement of Torts. See 1 Restatement (Third), Torts, Liability for Physical and Emotional Harm § 28 (b), p. 399 (2010). Because the treatment of the doctrine in the Restatement (Third) is materially identical to the treatment of the doctrine contained in the Restatement (Second), we refer to the Restatement (Second) for purposes of our analysis.

Connecticut Interlocal Risk Management Agency *v.* Jackson

The plaintiff, Connecticut Interlocal Risk Management Agency, as subrogee of its insured, the town of Somers (town), brought this action against the defendants, Christopher Jackson, Wesley Hall, and Erin Houle, claiming that their negligent disposal of cigarettes inside an abandoned, privately owned mill in the town ignited a fire that destroyed both the mill and a public, aboveground sewage line in the basement of the mill. The trial court granted the defendants' motions for summary judgment on the ground that the plaintiff could not establish which of the defendants' cigarettes had sparked the blaze and, therefore, could not establish causation, an essential element of its cause of action. In doing so, the trial court declined the plaintiff's request that it adopt the alternative liability doctrine as set forth in § 433 B (3) of the Restatement (Second), concluding, inter alia, that whether to do so was a decision only this court, the Appellate Court or the legislature properly should make. We reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. At approximately 1 a.m. on June 2, 2012, the defendants, all of whom were teenagers at the time, entered an abandoned mill located in the town. Once inside, the defendants proceeded to explore the multistory structure while drinking alcohol and smoking cigarettes. Each of them smoked approximately five cigarettes, and each discarded the cigarette butts by tossing them onto the wooden floor of the mill without extinguishing them. The defendants left the mill at approximately 1:45 a.m. By about 2:20 a.m., the property was engulfed in flames, and the Somers Fire Department had been dispatched to the scene. The fire destroyed both the mill and the sewage line.

The plaintiff compensated the town for the loss of the sewage line and, subsequently, commenced the present

Connecticut Interlocal Risk Management Agency *v.* Jackson

subrogation action against the defendants to recover the cost of replacing the sewage line. For purposes of this action, the plaintiff retained the services of two forensic fire experts, Detective Scott J. Crevier and Trooper Patrick R. Dragon, both of the Connecticut Department of Public Safety. Crevier and Dragon each opined that the likely cause of the fire was the careless disposal of the cigarettes.

The trial court thereafter granted the defendants' motions for summary judgment, concluding that the plaintiff could not prevail on the element of causation because it admittedly was unable to establish which of the defendants' cigarettes had caused the fire. In reaching its conclusion, the trial court declined the plaintiff's request to apply the alternative liability rule because to do so "would result in . . . a significant change in the negligence standards of this state," as reflected in "long-standing and binding" legal precedent, "by shifting the burden of proof to the defendants," such that the policy decision to adopt the rule was "better left to the legislature, the Appellate Court or [this] [c]ourt," none of which previously had endorsed the rule. The court also expressed concern that the adoption of such a rule "would be inconsistent with the tort reforms of the 1980s pursuant to which joint and several liability was abolished in favor of apportionment."

On appeal,[2] the plaintiff renews its claim that, under the unusual circumstances presented, it is only fair that the burden of proof on causation be shifted to the defendants so that they are required to establish that their negligence in discarding the cigarettes *did not* cause the fire. Otherwise, the plaintiff contends, it will be left

---

[2] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

333 Conn. 206 SEPTEMBER, 2019 211

Connecticut Interlocal Risk Management Agency *v.* Jackson

without a remedy because, through no fault of its own, it will be unable to prove causation even though it is undisputed that all of the defendants were negligent in discarding the cigarettes and that that conduct by at least one or more of the defendants caused the fire. The plaintiff supports this argument with the observation that the fire, for which it bears no responsibility, resulted in the destruction of evidence that the plaintiff otherwise might have used to establish which of the defendants started the fire. For their part, the defendants maintain that the trial court properly declined to apply the alternative liability rule, first, because the plaintiff cannot establish the threshold requirements of the rule and, second, because the rule is incompatible with our modern tort system, which is predicated on apportionment of liability rather than joint and several liability. Finally, the defendants argue that, even if we were to adopt the alternative liability doctrine, we should apply it prospectively only and not retroactively to the defendants' conduct.

We begin our analysis of the plaintiff's claim by setting forth the standard of review. "[T]he scope of our appellate review depends [on] the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Kelly* v. *New Haven*, 275 Conn. 580, 607, 881 A.2d 978 (2005). Because the plaintiff claims that the trial court failed to apply the appropriate legal principle, namely, the alternative liability doctrine, in granting the defendants' motions for summary judgment, our review is plenary.

Connecticut Interlocal Risk Management Agency *v.* Jackson

As we previously noted, the alternative liability doctrine, which was first articulated and adopted in *Summers* v. *Tice*, supra, 33 Cal. 2d 80, is an exception to the general rule that a plaintiff in a negligence action carries the burden of establishing that the defendant's tortious conduct caused the plaintiff's injury. In *Summers*, the plaintiff, Charles A. Summers, was injured when the defendants, two fellow hunters who knew Summers' approximate location, negligently shot at the same time in his direction. Id., 82–83. Following a bench trial, the court found for Summers, and, thereafter, the hunters appealed, claiming, among other things, that there was insufficient evidence to establish which of them had caused Summers' injuries. See id., 82–84. The California Supreme Court affirmed the trial court's judgment; id., 88; and, in so doing, adopted a burden shifting rule pursuant to which each of the hunters, in order to avoid liability on the issue of causation, was required to prove that his shot was not the cause of Summers' injuries. Id., 86–87.

The court reasoned: "When two or more persons by their acts are possibly the sole cause of a harm . . . and the plaintiff has introduced evidence that . . . one of the two persons . . . is culpable, then the defendant has the burden of proving that the other person . . . was the sole cause of the harm." (Internal quotation marks omitted.) Id., 85. The court explained that "[t]he real reason for the rule . . . is the practical unfairness of denying the injured person redress simply because he cannot prove how much damage each did, when it is certain that between them they did all; let them be the ones to apportion it among themselves." (Internal quotation marks omitted.) Id., 85–86. "When [the court] consider[s] the relative position of the parties and the results that would flow if [Summers] was required to pin the injury on one of the [hunters] only, a requirement that the burden of proof on that subject be shifted

Connecticut Interlocal Risk Management Agency *v.* Jackson

to [the hunters] becomes manifest. They are both wrongdoers—both negligent toward [Summers]. They brought about a situation [in which] the negligence of one of them injured [Summers] . . . [and thus] it should rest with . . . each [hunter] to absolve himself if he can. The injured party has been placed by [the hunters] in the unfair position of pointing to which [hunter] caused the harm. If one can escape the other may also and [Summers] is remediless." Id., 86. The court further observed that the rule found additional support in the fact that, "[o]rdinarily defendants are in a far better position to offer evidence to determine which one caused the injury." Id.

In reaching its conclusion, the court rejected the hunters' assertion that such a burden shifting rule conflicted with that court's established precedent that, "[when] two or more [tortfeasors] acting independently of each other cause an injury to [a] plaintiff, they are not joint [tortfeasors] and [the] plaintiff must establish the portion of the damage caused by each, even though it is impossible to prove the portion of the injury caused by each." Id., 87. The court explained, rather, "that the same reasons of policy and justice" that militated in favor of adopting the burden shifting rule as to the issue of causation also justified "relieving the wronged person of the duty of apportioning the injury to a particular defendant . . . . If [the] defendants are independent [tortfeasors] and thus each [is] liable for the damage caused by him alone, [then], at least, [when] the matter of apportionment is incapable of proof, the innocent wronged party should not be deprived of his right to redress. [Instead] [t]he wrongdoers should be left to work out between themselves any apportionment."[3] Id., 88.

_____

[3] In embracing the alternative liability doctrine, the Restatement (Second) provided the following illustration, which mirrors the facts of *Summers*: "A and B, independently hunting quail, both negligently shoot at the same time in the direction of C. C is struck in the face by a single shot, which could have come from either gun. In C's action against A and B, each of the

Connecticut Interlocal Risk Management Agency *v.* Jackson

Although this court previously has not had occasion to consider the alternative liability rule, it appears that at least some version of the doctrine "has been accepted by virtually all jurisdictions." M. Geistfeld, "The Doctrinal Unity of Alternative Liability and Market-Share Liability," 155 U. Pa. L. Rev. 447, 447 (2006); see also 1 Restatement (Third), Torts, Liability for Physical and Emotional Harm § 28, comment (f), p. 476 (2010) ("[o]nly two jurisdictions have rejected the concept of alternative liability since the . . . Restatement [Second]"); 1 D. Dobbs, The Law of Torts (2000) § 175, p. 428 ("most courts appear to regard [*Summers*] as established law on its facts"). Our research confirms that the vast majority of jurisdictions to have considered the issue have adopted the doctrine. See, e.g., *Bowman* v. *Redding & Co.*, 449 F.2d 956, 967–68 (D.C. Cir. 1971) (construing law of District of Columbia); *Abel* v. *Eli Lilly & Co.*, 418 Mich. 311, 329, 343 N.W.2d 164, cert. denied sub nom. *E.R. Squibb & Sons, Inc.* v. *Abel*, 469 U.S. 833, 105 S. Ct. 123, 83 L. Ed. 2d 65 (1984); *Estate of Chin ex rel. Chin* v. *St. Barnabas Medical Center*, 160 N.J. 454, 464, 734 A.2d 778 (1999); *Roderick* v. *Lake*, 108 N.M. 696, 701, 778 P.2d 443 (App.) (overruled in part on other grounds by *Heath* v. *La Mariana Apartments*, 143 N.M. 657, 180 P.2d 664 [2008]), cert. denied, 108 N.M. 681, 777 P.2d 1325 (1989); *Silver* v. *Sportsstuff, Inc.*, 130 App. Div. 3d 907, 909, 14 N.Y.S.3d 421 (2015); *Trapnell* v. *Sysco Food Services, Inc.*, 850 S.W.2d 529, 539–40 (Tex. App. 1992), aff'd, 890 S.W.2d 796 (Tex. 1994); see also *Snoparsky* v. *Baer*, 439 Pa. 140, 144–45, 266 A.2d 707 (1970).[4]

defendants has the burden of proving that the shot did not come from his gun, and if he does not do so is subject to liability for the harm to C." 2 Restatement (Second), supra, § 433 B, illustration (9), p. 447.

[4] Unlike other courts that have been urged to adopt the alternative liability rule, the Oregon Supreme Court declined to do so, primarily because, as that court maintained, "the adoption of any theory of alternative liability requires a profound change in fundamental tort principles of causation, an adjustment rife with public policy ramifications" that are better left to the judgment of the legislature. *Senn* v. *Merrell-Dow Pharmaceuticals, Inc.*,

Connecticut Interlocal Risk Management Agency *v.* Jackson

As both the Restatement (Second) and those courts have explained, the rule applies only when the plaintiff can demonstrate, first, that all of the defendants acted negligently and harm resulted, second, that all possible tortfeasors have been named as defendants, and, third, that the tortfeasors' negligent conduct was substantially simultaneous in time and of the same character so as to create the same risk of harm. See 2 Restatement (Second), supra, § 433 B, comments (f) and (g), p. 446; see also, e.g., *Goldman* v. *Johns-Manville Sales Corp.*, 33 Ohio St. 3d 40, 45, 46, 47, 514 N.E.2d 691 (1987) ("the burden shifts to the defendant only if the plaintiff can demonstrate that [1] all defendants acted tortiously and that the harm resulted from conduct of one of them," [2] "the defendants' conduct creates a substantially similar risk of harm," and [3] "all the parties who were or could have been responsible for the harm to the plaintiff were joined as defendants").

The reasons for these requirements are evident. With respect to the first requirement, a plaintiff must establish by a preponderance of the evidence that all defendants acted negligently before the burden of proof on causation shifts because the rationale for the exception is the unfairness inherent in permitting multiple tortfeasors, acting simultaneously, to escape liability merely because their conduct and the resulting harm has made it difficult, if not impossible, for the plaintiff to demonstrate which of them caused the harm. See 2 Restatement (Second), supra, § 433 B, comment (f), p. 446; see also *Bowman* v. *Redding & Co.*, supra, 449 F.2d 968 (reasoning that alternative liability rule serves interests of justice and is so limited in applicability that it does

305 Or. 256, 271, 751 P.2d 215 (1988). The Oregon Supreme Court stands virtually alone in categorically rejecting the rule. For the reasons set forth in this opinion, we disagree with that court's concerns that the exception, when applied in the limited and unusual circumstances for which it was intended, contravenes or otherwise undermines fundamental tort principles.

Connecticut Interlocal Risk Management Agency *v.* Jackson

not conflict with settled negligence principles). Thus, if a plaintiff fails to prove that all of the defendants committed tortious acts that may have caused the harm, the doctrine does not apply. See, e.g., *Porterie* v. *Peters*, 111 Ariz. 452, 456, 532 P.2d 514 (1975) (declining to apply alternative liability rule because "the proof [was] not clear as to which of the defendants, if any . . . committed an act of negligence [that] produced [the] plaintiff's injury"); *Cuonzo* v. *Shore*, 958 A.2d 840, 844 (Del. 2008) (declining to apply rule because plaintiff injured in automobile accident "never contended" that both of the defendant drivers were negligent); *Goldman* v. *Johns-Manville Sales Corp.*, supra, 33 Ohio St. 3d 46 ("[T]his theory relaxes only the traditional requirement that the plaintiff demonstrate that a specific defendant [or defendants] caused the injury. But the relaxation is . . . warranted [only when the] plaintiff shows that all defendants acted tortiously.").

With respect to the second requirement, a plaintiff must establish that all possible tortfeasors have been named as defendants "to eliminate from the jury's consideration the theory that some other cause, besides a joined [defendant's] conduct, caused the injury." *Trapnell* v. *Sysco Food Services, Inc.*, supra, 850 S.W.2d 539 n.7. Otherwise, it simply would not be fair and equitable to relieve the plaintiff of the responsibility of proving which tortfeasor or tortfeasors caused the harm. And, finally, with respect to the third requirement, a plaintiff must demonstrate that the tortious conduct was substantially simultaneous in time and of the same character so as to create the same risk of harm because it would be unreasonable to require defendants to absolve themselves from liability unless "the likelihood that any one of them injured the plaintiff is relatively high." (Internal quotation marks omitted.) *Silver* v. *Sportsstuff, Inc.*, supra, 130 App. Div. 3d 910.

Connecticut Interlocal Risk Management Agency *v.* Jackson

We agree with our sister states that, when these three threshold requirements have been met, the alternative liability doctrine should be recognized as a limited exception to the general rule that the plaintiff in a negligence action must prove that each of the defendants caused the plaintiff's harm, in addition to all of the other elements of that tort. Faced with the choice of leaving an injured plaintiff without a remedy, on the one hand, or requiring ''two wrongdoers, both of whom had acted negligently toward the plaintiff and had created the situation [in which the] plaintiff was injured, [to] bear the burden of absolving themselves''; *Abel* v. *Eli Lilly & Co.*, supra, 418 Mich. 326; on the other, it seems clear that the latter approach represents the fairer, more sensible alternative. See, e.g., 2 Restatement (Second), supra, § 433 B, comment (f), p. 446 (application of alternative liability rule is warranted by virtue of unfairness that would exist if multiple, proven tortfeasors were allowed to avoid liability merely because manner in which they were negligent and nature of resulting harm have precluded plaintiff from establishing which of them caused that harm); *Wysocki* v. *Reed*, 222 Ill. App. 3d 268, 278, 583 N.E.2d 1139 (1991) (''[w]e believe it is more unjust that the injured party receive nothing from two admitted wrongdoers''), appeal denied, 144 Ill. 2d 644, 591 N.E.2d 32 (1992); *Roderick* v. *Lake*, supra, 108 N.M. 701 (alternative liability rule is ''fairest and most logical way to determine the amount of fault of two or more tortfeasors in the unusual circumstances . . . [in which the] plaintiff can prove [that the] defendants were negligent . . . but cannot prove which defendant's negligence caused the injury, or which defendant was more at fault'').

The three requirements for application of the alternative liability doctrine are satisfied in the present case. The plaintiff has adduced evidence demonstrating that all three of the defendants acted negligently in the

Connecticut Interlocal Risk Management Agency *v.* Jackson

manner in which they disposed of their cigarettes in the mill, that all possible tortfeasors have been named as defendants, and that the tortious conduct of those defendants was substantially simultaneous in time and of the same character so as to give rise to the same risk of harm. We therefore agree with the plaintiff that we must reverse the trial court's decision to grant the defendants' motions for summary judgment and that the plaintiff is entitled to the benefit of the alternative liability doctrine for the purpose of proving its case at trial.

The defendants argue against application of the doctrine for three reasons: (1) the plaintiff has failed to satisfy the rule's requirements; (2) the rule is inconsistent with our statutory apportionment scheme; and (3) even if this court were to adopt the rule, it should not be applied retroactively to the defendants' conduct in this case. None of these contentions is persuasive.

First, the defendants claim that the plaintiff has not produced sufficient evidence to create a triable issue as to all of the necessary conditions for the alternative liability rule to apply. Although conceding that the plaintiff appears to have named all possible tortfeasors as defendants and presented evidence sufficient to establish that the defendants' tortious conduct was substantially simultaneous and similar in nature, the defendants nevertheless assert that there are three *additional* requirements that the plaintiff must meet before the rule may be applied. Specifically, they maintain that the plaintiff must demonstrate that (1) one, and only one, of the defendants possibly could have caused the harm, (2) the defendants have better information about causation than the plaintiff, and (3) the plaintiff is completely innocent with regard to the loss. We disagree that the plaintiff is entitled to the benefit of the rule only upon satisfaction of these three requirements.

Connecticut Interlocal Risk Management Agency *v.* Jackson

To support their contention that the plaintiff must prove that only one defendant caused the harm in order to avail itself of the rule, the defendants rely on *Thodos* v. *Bland*, 75 Md. App. 700, 542 A.2d 1307, cert. denied, 313 Md. 689, 548 A.2d 128 (1988). In *Thodos*, the plaintiff, Patricia Thodos, was a passenger in a car driven by the defendant Alton Linsey Thacker that collided with a car driven by the other defendant, Brian Bland. Id., 703. The Maryland Court of Special Appeals declined to recognize the applicability of the alternative liability rule under the circumstances, which involved Thodos' failure to convince the jury that either Bland or Thacker or both of them were negligent and that such negligence caused Thodos' injuries. Id., 712. *Thodos* does not stand for the proposition advanced by the defendants in the present case; rather, the court in *Thodos* rejected the applicability of the rule because Thodos failed to prove that *both* Bland and Thacker were negligent, that Thodos' injuries were caused by the negligence of only one of them, and that there was uncertainty as to which one. Id., 715–17. More to the point, conditioning the application of the doctrine on proof that only one defendant caused the harm conflicts with the core rationale underlying the rule, namely, to address the unfairness that arises when, as a consequence of the simultaneous negligence of multiple defendants, it is impossible for the plaintiff "to pin the injury on one of the defendants only . . . ." *Summers* v. *Tice*, supra, 33 Cal. 2d 86.

The defendants also contend that the doctrine should be applied only upon a showing by the plaintiff that the defendants have better access to information concerning the actual cause of the harm sustained by the plaintiff. It is true that, in *Summers*, the court recognized that, as a general matter, when the negligent conduct of multiple tortfeasors is more or less simultaneous, each such tortfeasor is likely to be better situated than the plaintiff to know who among them caused the plain-

tiff's injury. See id. As other courts have observed, however, the court in *Summers* made this point only by way of explaining the justifications underlying the alternative liability rule, and there is nothing in the court's decision in *Summers* to suggest that a plaintiff must demonstrate, in any particular case, that the tortfeasors have better access than the plaintiff to information concerning the cause of the plaintiff's injuries. See, e.g., *Abel* v. *Eli Lilly & Co.*, supra, 418 Mich. 333–34 (noting that defendants' access to evidence of causation is not required); *Silver* v. *Sportsstuff, Inc.*, supra, 130 App. Div. 3d 910 ("[A]lthough *Summers* indicated that defendants are [o]rdinarily . . . in a far better position to offer evidence to determine which one caused the injury, the [decision] in *Summers* did not conclude that the two defendants, simultaneously shooting in the same direction, were in a better position than the plaintiff to ascertain whose shot caused the injury . . . . Thus, in [*Summers*] the paradigm case for alternative liability, the defendants did not have greater access to information that might establish the identity of the tortfeasor . . . ." [Citations omitted; internal quotation marks omitted.]). Indeed, adopting the requirement advocated by the defendants may only encourage those defendants to adopt a strategy of wilful ignorance or to remain silent to avoid liability. See id., 910–11 ("failure to apply the [burden shifting] doctrine of alternative liability to circumstances such as those presented . . . might encourage products distributors to remain silent by failing to adequately label or track their products, and thereby shielding their identity, as a means of avoiding liability" [internal quotation marks omitted]).

The defendants also maintain, in reliance on *Leuer* v. *Johnson*, 450 N.W.2d 363 (Minn. App. 1990), that, to take advantage of the doctrine, the plaintiff must prove it was innocent of all wrongdoing. *Leuer*, however, is inapposite to the present case because it involved

Connecticut Interlocal Risk Management Agency *v.* Jackson

the issue of whether the doctrine of *res ipsa loquitur* applied, not the alternative liability doctrine. See id., 363–66. Indeed, even if we agreed—and we do not— with the defendants' unsupported claim that the alternative liability doctrine applies only if the plaintiff can prove that it was altogether free of blame for its injuries, the defendants have offered no evidence that the town breached any duty in regard to the mill.

The defendants next argue that, even if the plaintiff has satisfied all three of the requirements that we have identified as necessary prerequisites for application of the rule, the rule is incompatible with this state's enactment of tort reform, pursuant to which the legislature replaced the common-law rule of joint and several liability with apportioned liability, whereby each tortfeasor is liable for his or her proportionate share of the plaintiff's damages. Specifically, the defendants argue that the rule ''[c]annot [w]ork'' without joint and several liability because, in its absence, defendants ''have no incentive'' to meet their burden of disproving that their negligence caused the plaintiff's injury, thereby ''mak[ing] it impossible for a fact finder to apportion liability'' without resort to impermissible speculation. We find no merit in this argument.

We disagree that, under the alternative liability rule, defendants ''have no incentive'' to establish that their negligence was not a cause of the injuries because it is only by doing so that they will be able to avoid liability. This is true under a system that holds tortfeasors jointly and severally liable for their negligence or under a system based on apportionment of liability: under either scheme, the alternative liability rule places the burden on the tortfeasors to demonstrate that they did not cause the damages, and, if they fail to meet that burden, they will be held liable.

We acknowledge, as the defendants assert, that the rule deviates from established negligence principles by

Connecticut Interlocal Risk Management Agency *v.* Jackson

allowing the fact finder, in the absence of evidence to the contrary, to conclude that all three defendants caused the plaintiff's injury and, therefore, that all three defendants are equally liable for the plaintiff's damages. Contrary to the defendants' assertions, however, use of this presumption to address the evidentiary lacuna created by the tortfeasors' simultaneous negligence is not a disqualifying feature but, rather, the sine qua non of the rule. As one court aptly stated in addressing a similar contention, "[§ 433 B (3) of the Restatement (Second)] is an exception to the general rule that the plaintiff must establish by a preponderance of evidence that his injury was caused by defendant's tortious conduct. [T]he reason for the exception is the injustice of permitting proved wrongdoers, who among them have inflicted an injury [on] the entirely innocent plaintiff, to escape liability merely because the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused the harm.

"The provisions of [§ 433 B] (3) are not to be gainsaid on the ground that they are contrary to the doctrine requiring [the plaintiff to prove all the elements of the cause of action]. They are set forth as limited exceptions to that doctrine. These exceptions are supported by the interest of justice and are so limited and structured that it is [evident] that they do not represent a disguised overturning or undermining of the main doctrine. So far as [§ 433 B] (3) is concerned [the court is] satisfied that it is fairly supported by precedents reaching the indicated result as in the interest of justice and consonant with sound common law.

"The effect of shifting the burden of proof to the defendants will . . . arise [only] if the jury should decide that it is satisfied that [the] plaintiff has established by a preponderance of the evidence that both defendants were wrongdoers . . . and that one or another was the cause of [the plaintiff's injury], but is unable to find from a preponderance of the evidence

Connecticut Interlocal Risk Management Agency *v.* Jackson

which defendant [caused the injury]. Then the burden will shift to each defendant to absolve itself of liability, either for the purpose of avoiding a verdict for the plaintiff or for avoiding a claim of contribution by the other defendant. If neither defendant can prove [that] it did not cause the [plaintiff's injury], they would both be liable.'' (Footnotes omitted; internal quotation marks omitted.) *Bowman* v. *Redding & Co*., supra, 449 F.2d 967–68.

We therefore see no reason why our adoption of the alternative liability rule should be understood as a return to our past system of joint and several liability, pursuant to which any one of the defendants could have been liable for the entire judgment at the option of the plaintiff. It is not. To the contrary, we view the rule as being fully compatible with our modern apportionment scheme. Indeed, when subject to the alternative liability rule, the defendants fare *better* under the apportionment approach because, in the event they are unable to absolve themselves of liability, the law requires that the plaintiff's damages be apportioned equally among them, with each defendant liable for only his or her proportionate share. See General Statutes § 52-572h (c).

Finally, the defendants assert that, if we adopt the alternative liability doctrine for cases involving fact patterns like the present one, we nevertheless should not apply it retroactively to their conduct because they were not on notice that we would recognize the doctrine and because it would impose a substantial hardship on them. We disagree.

''Traditionally . . . in cases of civil tort liability in which new causes of action are recognized, the new theory of liability is applied to the parties in the case''; *Clohessy* v. *Bachelor*, 237 Conn. 31, 57, 675 A.2d 852 (1996); see also *Campos* v. *Coleman*, 319 Conn. 36, 62, 123 A.3d 854 (2015) (judicial decisions generally apply

Connecticut Interlocal Risk Management Agency *v.* Jackson

retroactively to pending cases); and only in exceptional circumstances will we deviate from that general rule. See *Campos* v. *Coleman*, supra, 62. Thus, to establish that the alternative liability doctrine should be applied prospectively only, the defendants must demonstrate that applying the doctrine retroactively to them "would produce substantial inequitable results, injustice or hardship." *Ostrowski* v. *Avery*, 243 Conn. 355, 378 n.18, 703 A.2d 117 (1997). The defendants have identified no such facts or circumstances that would render the retroactive application of the alternative liability rule in the present case unfair or unduly harsh, and, importantly, there is no basis for a claim that applying the rule retrospectively would violate or compromise any legitimate reliance interest of the defendants. See, e.g., *Mueller* v. *Tepler*, 312 Conn. 631, 655–56, 95 A.3d 1011 (2014); *Clohessy* v. *Bachelor*, supra, 57 and n.15; *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 495–96 and n.5, 408 A.2d 260 (1979). In fact, it would be facetious to suggest that any of the defendants, each of whom carelessly disposed of their cigarettes, would have acted any differently if the law had been different. Because the defendants have identified no persuasive reason why the alternative liability rule that we adopt today should not be applied to them, we reject their claim that the rule should be applied prospectively only.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.